| |
|---|
| CHERYL YEBOAH and KWADWO YEBOAH, *Plaintiffs*, v. BANK OF AMERICA, N.A., NATIONSTAR MORTGAGE, LLC, and MCCALLA RAYMER LIEBERT PIERCE, LLC *Defendants*. |

No. 3:18-cv-2020 (VAB)

## RULING AND ORDER ON MOTIONS TO DISMISS

On December 11, 2018, Cheryl Yeboah and Kwadwo Yeboah ("Plaintiffs") sued Bank of America, N.A. ("Bank of America"), Nationstar Mortgage, LLC ("Nationstar"), and McCalla Raymer Leibert Pierce, LLC ("McCalla"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e(10), 1692f, and 1692g(a)(2) ("FDCPA"), and the Fair Credit Reporting Act, 15 U.S.C. § 1681-s2(b) ("FCRA"). Complaint, dated Dec. 11, 2018, ECF No. 1, at 4–7.

Currently pending before the Court are three motions to dismiss the complaint. McCalla Raymer Leibert Pierce, LLC's Motion to Dismiss, dated Jan. 18, 2019 ("McCalla Mot."), ECF No. 19; Bank of America, N.A.'s Motion to Dismiss, dated Apr. 26, 2019 ("Bank of America Mot."), ECF No. 29; Nationstar Mortgage, LLC's Motion to Dismiss, dated Apr. 26, 2019 ("Nationstar Mot."), ECF No. 30.

For the reasons explained below, Defendants' motions to dismiss are **GRANTED.**

While Defendants' motions seeking dismissal under Federal Rule of Civil Procedure 12(b)(1) are granted with respect to Mr. Yeboah—who lacks standing to sue Defendants—the

Court does address the merits of Ms. Yeboah's claims, and dismisses them under Federal Rule of Civil Procedure 12(b)(6).

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Mr. and Ms. Yeboah allege that, on July 12, 2012, U.S. Bank National Association ("U.S. Bank"), as successor and trustee for Bank of America and Nationstar, filed a foreclosure complaint in the Connecticut Superior Court for the Judicial District of Hartford[1] against Ms. Yeboah's property, located at 39 Ridge Boulevard[2] in East Granby, Connecticut. *See* Compl. ¶ 11. The foreclosure complaint allegedly stated that U.S. Bank acquired the mortgage from a succession of other business entities, and that Ms. Yeboah had not met her mortgage's financial obligations. *Id.* ¶¶ 12–17.

Mr. and Ms. Yeboah allege that U.S. Bank lied and was not the owner of the mortgage at the time it filed the foreclosure complaint. *See id.* ¶¶ 18–20. Rather, they allege that Wilmington Finance, Inc. held the note in 2012, when U.S. Bank filed the foreclosure action in the Superior Court. *See id.*

---

[1] While the Complaint itself does not name the court in which the foreclosure complaint was filed, a docket sheet for the action indicating that a foreclosure complaint was filed on July 12, 2012, and naming Ms. Yeboah as the defendant, is attached to Bank of America's Motion to Dismiss. *See* Docket Sheet, annexed as Ex. F to Bank of America Mot., ECF No. 29-7. In addition, in an April 12, 2019 status report filed with the Court following the state court's decision on their motion to dismiss the foreclosure complaint, Plaintiffs acknowledged the authenticity of the state court decision attached to Defendants' status update earlier that same day. *See* Plaintiffs' Status Report, dated Apr. 12, 2019, ECF No. 28, at 1. That decision identifies the Superior Court for the Judicial District of Hartford as the venue of the action. Memorandum of Decision, dated Mar. 13, 2019, annexed as Ex. A to Defendants' Joint Status Report, dated Apr. 12, 2019, ECF No. 27-1. Accordingly, the Court takes judicial notice of this venue, and also finds that Plaintiffs have admitted, that the Connecticut Superior Court for the Judicial District of Hartford is the court in which the foreclosure complaint was filed. *See Liberty Mut. Ins. Co. v. Rotches Pork Packers*, 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (citations and internal quotation marks omitted).

[2] While the Complaint itself does not mention this address, it is listed on the original mortgage and note, both of which are incorporated by reference. *See* Note, dated Apr. 26, 2019, annexed as Ex. A to Bank of America Mot., ECF No. 29-2; Mortgage, dated Apr. 26, 2019, annexed as Ex. B to Bank of America Mot., ECF No. 29-3.

Mr. and Ms. Yeboah also allege that Defendants knew that U.S. Bank did not own Ms. Yeboah's mortgage when it filed the foreclosure complaint, and that Defendants misrepresented the history of Ms. Yeboah's mortgage and chain of title when they filed "documents and affidavits" with the Superior Court in support of U.S. Bank's claim that it owned the mortgage in 2012. *Id.* ¶¶ 21–22. They further allege that Defendants continued to misrepresent this history in affidavits and pleadings filed over the course of the state court litigation. *Id.* ¶¶ 23–36.

### B.  Procedural History

On December 11, 2018, Mr. and Ms. Yeboah sued Bank of America, Nationstar, and McCalla in this Court, alleging that Defendants' submissions in U.S. Bank's foreclosure action against Ms. Yeboah in the Connecticut Superior Court were "false, deceptive, or misleading representations" of her debt. *Id.* at ¶ 31. Mr. and Ms. Yeboah asserted three causes of action under the FDCPA, alleging that: (1) Defendants were "debt collectors" who used "false representation or deceptive means to collect . . . information concerning a customer," in violation of 15 U.S.C. § 1692e, *id.* ¶¶ 37–48; (2) Defendants used "unfair or unconscionable means" to collect on Ms. Yeboah's debt, in violation of 15 U.S.C. § 1692f, *id.* ¶¶ 49–57; and (3) Defendants did not provide Plaintiffs with "a written notice containing . . . the name of the creditor to whom the debt is owed," in violation of 15 U.S.C. § 1692g(a)(2), *id.* ¶¶ 58–68. Mr. and Ms. Yeboah asserted one cause of action under the FCRA, alleging that Defendants did not reasonably investigate Ms. Yeboah's dispute, review and correct the relevant information, or "provide notice that the account was in dispute," in violation of 15 U.S.C. § 1681s-2(b). *Id.* ¶¶ 69–78.

On January 18, 2019, McCalla moved under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss all claims against them, arguing that: (1) Mr. Yeboah did not have

standing because he did not qualify as a "consumer" under the FDCPA; (2) all claims under the

FDCPA were barred by the statute of limitations; (3) McCalla's communications with Ms.

Yeboah's attorney were "excluded from the purview of the FDCPA"; and (4) McCalla did not

qualify as a "furnisher of information" under the FCRA. Memorandum of Law in Support of

McCalla Mot., dated Jan. 18, 2019 ("McCalla Mem."), annexed to McCalla Mot., ECF No. 19-1,

at 12–17. McCalla also urged the Court to abstain from exercising jurisdiction under the *Younger*

or *Burford* abstention doctrines because it could "unduly intrude" upon the Superior Court

proceedings. *Id*. at 4-8, 4 n.1 (citing *Burford v. Sun Oil Co*, 319 U.S. 315 (1943) and *Younger v.*

*Harris*, 401 U.S. 37 (1971)).

On January 28, 2019, Nationstar moved to stay proceedings in this Court, pending a

ruling on Ms. Yeboah's motion to dismiss the foreclosure complaint in the state court action.

Nationstar Mortgage, LLC's Motion to Stay Action Pending Determination of State Court

Motion to Dismiss, dated Jan. 28, 2019 ("Nationstar Motion to Stay"), ECF No. 20.

On January 31, 2019, the Court granted Nationstar's motion and stayed proceedings until

April 12, 2019. Order Granting Motion to Stay, dated Jan. 31, 2019, ECF No. 23.

On April 12, 2019, the parties filed status reports with the Court. Defendants' Joint Status

Report, dated Apr. 12, 2019("Defs.' Report"), ECF No. 27; Plaintiffs' Status Report, dated Apr.

12, 2019 ("Pls.' Report"), ECF No. 28. Defendants attached the Superior Court's ruling to its

status report, which found that U.S. Bank had demonstrated "prima facie evidence" that it owned

Ms. Yeboah's note when it filed its foreclosure action against her in 2012. Superior Court of

Connecticut Memorandum of Decision, dated Mar. 13, 2019 ("Superior Court Decision"),

annexed as Ex. A to Defs.' Report, ECF No. 27-1 at 13. In their status report, Mr. and Ms.

Yeboah indicated that they might appeal the Superior Court's decision. Pls.' Report at 1–2.

On April 26, 2019, Bank of America moved to dismiss Mr. and Ms. Yeboah's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because (1) Mr. Yeboah lacked standing to bring the case because he did not qualify as a "consumer" under the FDCPA nor did he allege any injury in fact; (2) their claims were barred by the statute of limitations; (3) the FDCPA only recognizes violations by third-party debt collectors, not parties collecting on a debt owed to themselves; and (4) Mr. and Ms. Yeboah did "not allege sufficient facts to state a plausible claim for violation of the FCRA." Memorandum of Law in Support of Bank of America Mot., dated Apr. 26, 2019 ("Bank of America Mem."), annexed to Bank of America Mot., ECF No. 29-1, at 8–15. Bank of America also urged the Court to abstain from ruling on Mr. and Ms. Yeboah's claims under the *Younger* or *Colorado River* abstention doctrines because the ongoing Superior Court action would determine which bank owned the mortgage in 2012. *See id.* at 6–8 (citing *Younger*, 401 U.S. 37, and *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)).

Also on April 26, 2019, Nationstar moved to dismiss Mr. and Ms. Yeboah's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because (1) Mr. Yeboah lacked standing to assert the claims and failed to allege any injury in fact; (2) Ms. Yeboah "fail[ed] to allege concrete harm" from any FCRA violation and also lacked standing as to that claim; (3) the FDCPA claims were barred by the statute of limitations; (4) the FDCPA claims' "alleged false representations [were] not material"; (5) legal pleadings do not qualify as "initial communications" under the FDCPA; and (6) Mr. and Ms. Yeboah offered no evidence to demonstrate that Nationstar failed to investigate her credit dispute. Memorandum of Law in Support of Nationstar Mot., dated Apr. 26, 2019 ("Nationstar Mem."), annexed to Nationstar Mot., ECF No. 30-1 at 8–22.

On May 8, 2019, Mr. and Ms. Yeboah indicated they would be proceeding with this case *pro se* and moved for permission to participate in electronic filing. Notices of *Pro Se* Appearance, dated May 8, 2019, ECF Nos. 31 & 32; Motions by Self-Represented Litigants to Participate in Electronic Filing, dated May 8, 2019, ECF Nos. 37 & 38.

On May 9, 2019, Mr. and Ms. Yeboah's attorney moved to withdraw from this case. Motion to Withdraw, dated May 9, 2019, ECF No. 34, at 1–2.

On May 10, 2019, the Court granted the motion to withdraw and the motions to participate in electronic filing. Order, dated May 10, 2019, ECF No. 39; Order, dated May 10, 2019, ECF No. 40.

Mr. and Ms. Yeboah did not file a timely response to Defendants' motions to dismiss or move for an extension of time.

On July 9, 2019, the Court scheduled a hearing on the motions to dismiss. Notice of E-Filed Calendar, dated Jul. 9, 2019, ECF No. 46. Mr. and Ms. Yeboah, who have consented to receiving electronic notifications from the Court, *see* ECF Nos. 35–36, were e-mailed notice of the hearing that same day. *See* Notice of Electronic Filing, dated Jul. 9, 2019 at 8:35 a.m., ECF No. 46.

On July 23, 2019, the Court held a hearing on the motions to dismiss. Minute Entry, filed Jul. 24, 2019, ECF No. 48. Mr. and Ms. Yeboah did not appear. *Id.* The Court held the hearing open for an hour before reconvening, noting Plaintiffs' failure to appear on the record, and reserving decision on the motions—stating on the record that the Court intended to rule on the motions without oral argument.[3]

---

[3] Given Plaintiffs' failure to respond to the motions, move for an extension of time, or appear at the hearing, the Court exercises its discretion to rule on the pending motions to dismiss without oral argument. D. Conn. L. Civ. R. 7(a)(3) ("[T]he Court may, in its discretion, rule on any motion without oral argument."); *see generally Dietz v.*

## II.    STANDARD OF REVIEW

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); FED. R. CIV. P. 12(b)(1). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *Id.*

"When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet*, 235 F.3d at 83). However, the court may also resolve disputed jurisdictional fact issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

### B.  Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed under Federal Rule of Civil Procedure 12(b)(6). FED. R. CIV. P. 12(b)(6).

In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First,

*Bouldin*, 136 S. Ct. 1885, 1892 (2016) (recognizing a district court's inherent authority to manage its docket "with a "view toward the efficient and expedient resolution of cases").

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), *cert. denied*, 537 U.S. 1089 (2002).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs.,*

*Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

Because federal courts are courts of limited jurisdiction, "[c]ustomarily, a federal court first resolves any doubts about its jurisdiction over the subject matter of a case before reaching the merits or otherwise disposing of the case." *Cantor Fitzgerald, L.P, v. Peaslee,* 88 F.3d 152, 155 (2d Cir. 1996); *see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir. 1990) ("the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.") (citing 5 WRIGHT & MILLER, FED. PRAC. & PROC. § 1350, 548 (1969)).

Defendants agree that Mr. Yeboah does not have standing to pursue this action. McCalla Mem. at 8; Bank of America Mem. at 8–9; Nationstar Mem. at 8–10. In addition, McCalla and Bank of America argue that this Court should abstain from exercising jurisdiction due to the ongoing state court proceedings. McCalla Mem. at 4–8; Bank of America Mem. at 6–8.

Because standing and abstention are threshold issues that affect this Court's subject-matter jurisdiction, the Court will address these issues before taking up other grounds for dismissal on the merits under Rule 12(b)(6). *See Cantor Fitzgerald*, 88 F.3d at 155.

### A.  Mr. Yeboah's Standing

Standing is a constitutional requirement rooted in Article III of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). "Standing, moreover, like other jurisdictional inquiries, cannot be inferred argumentatively

from averments in the pleadings, but rather must affirmatively appear in the record." *Thompson v. Cty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (citation, internal quotation marks and alterations omitted).

To demonstrate standing, a plaintiff must allege an injury-in-fact that is fairly traceable to defendant's conduct and is likely to be redressed by judicial action. *Allen v. Wright*, 468 U.S. 737, 751 (1984); *see also Lujan*, 504 U.S. at 560–61 ("Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of— the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (internal quotation marks, alterations, and citations omitted); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (to establish standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.") (citing *Lujan*, 504 U.S. at 560).

"[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (quoting *Lujan*, 504 U.S. at 561).

But if a plaintiff does not meet his burden of demonstrating such an injury, he does not have standing, and the Court must dismiss that plaintiff's claims. *See* FED. R. CIV. P. 12(b)(1); *see also Lujan*, 504 U.S. at 561 ("The party invoking federal jurisdiction bears the burden of establishing [standing]."); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 96 (1998) ("In a long and venerable line of cases, this Court has held that, without proper jurisdiction, a court cannot proceed at all, but can only note the jurisdictional defect and dismiss the suit.").

Defendants argue that Mr. Yeboah lacks standing to sue because he has not pleaded an injury that is particular to him. McCalla Mem. at 8; Bank of America Mem. at 8–10; Nationstar Mem. at 8–9.

The Court agrees.

Mr. Yeboah has not demonstrated an injury in fact as a result of Defendants' conduct. He is not listed on the mortgage or note for 39 Ridge Boulevard, nor named as a defendant in U.S. Bank's foreclosure action. *See* Note at 1–7; Mortgage at 1–16; Superior Court Decision at 1. Plaintiffs merely allege that Defendants' affidavits make allegedly false representations against Ms. Yeboah's debt. At no point do they allege that Mr. Yeboah has any interest in the debt particular to him. Nor do they put forth any other facts to indicate that he has been injured. *See* Compl. ¶¶ 11–36.

Accordingly, because Mr. Yeboah has not demonstrated an injury in fact, he lacks standing to bring these claims before the Court, and he will be dismissed from this action.[4] *See Sibersky v. Goldstein*, 155 F. App'x 10, 12 (2d Cir. 2005) (affirming district court's dismissal of husband's FDCPA claims because "Sibersky does not stand in the shoes of the consumer and he cannot plead injurious exposure to the offending letters that were received by the consumer.");

---

[4] Having determined that dismissal of Mr. Yeboah is required, the Court will discuss the remainder of the claims as to Ms. Yeboah only.

*see also Kropelnicki v. Siegel*, 290 F.3d 118, 130 (2d Cir. 2002) (holding that plaintiff lacked standing to bring FDCPA claim because even if "the contents of a letter violated the FDCPA," the letter "was not addressed to her.").

## B. Abstention

As a general matter, federal courts may not decline to exercise jurisdiction where it has properly been asserted by a plaintiff. *See Sprint Commc'ns v. Jacobs*, 571 U.S. 69, 77 (2013) ("Federal courts, it was early and famously said, have 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.' Jurisdiction existing, this Court has cautioned, a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'") (quoting *Cohens v. Virginia*, 19 U.S. 264, 404 (1821); *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

But the Supreme Court has nevertheless recognized several doctrines of equitable abstention that may, in rare circumstances, permit federal courts to abstain from jurisdiction. *See New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) ("[T]here are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do.' We have carefully defined, however, the areas in which such 'abstention' is permissible[.]") (quoting *Younger v. Harris*, 401 U.S. 37, 45 (1971); *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)); *Colo. River*, 424 U.S. at 813 ("Abstention from the exercise of federal jurisdiction is the exception, not the rule.").

McCalla and Bank of America have variously argued that either the *Younger*, *Colorado River*, or *Burford* abstention doctrines would permit the Court to abstain from jurisdiction in this

case. McCalla Mem. at 4–8 (arguing for *Burford* and *Younger* abstention); Bank of America Mem. at 6–8 (arguing for *Colorado River* and *Younger* abstention).

The Court disagrees.

## 1. *Younger* Abstention

Under the *Younger* abstention doctrine, federal courts must abstain from ruling in cases that contain parallel issues to those in state criminal proceedings, "certain civil enforcement proceedings, and civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Disability Rights N.Y. v. New York*, 916 F.3d 129, 133 (2d Cir. 2019) (citing *Sprint*, 571 U.S. at 78). "[W]hen *Younger* applies, abstention is mandatory and its application deprives the federal court of jurisdiction in the matter." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002) (citing *Colo. River*, 424 U.S. at 816 n. 22).

Bank of America and McCalla argue that *Younger* abstention is required because the state court foreclosure proceeding is a civil proceeding involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions, as several district courts have indeed held. *See, e.g.*, *Lindsay v. Tierney*, No. 3:18-cv-840 (JCH), 2019 WL 132728, at *3 (D. Conn. Jan. 8, 2019) ("A state foreclosure action, like the underlying State Court Foreclosure Action here, is one of the types of actions in which federal courts abstain from interfering, pursuant to *Younger*.") (citation omitted); *Santana v. Fed. Nat'l Mortg. Assoc.*, No. 1:15-cv-1424 (TJM/DJS), 2016 WL 676443, at *2 (N.D.N.Y. Feb. 18, 2016) ("A number of courts in this circuit have concluded that abstention is appropriate when a federal action seeks to enjoin an ongoing state foreclosure proceeding. Such courts have found that a state foreclosure action is a civil proceeding that implicates a State's interest in enforcing the orders and judgments of its

courts and abstained from hearing the federal case.") (collecting cases) (internal quotation marks omitted).

But unlike plaintiffs in the cases cited by Bank of America and McCalla, Ms. Yeboah is not seeking to enjoin ongoing state court proceedings.[5] *See, e.g.*, *Lindsay*, 2019 WL 132728, at *3 ("The court agrees that, insofar as Lindsay seeks to enjoin the state court from enforcing the Judgment of Strict Foreclosure, she asks this court to intervene in a civil proceeding that implicates a state's interest in enforcing the orders and judgments of its courts. Therefore, insofar as Lindsay seeks this court's intervention in a pending state foreclosure, this court abstains from doing so under *Younger*."). Instead, Ms. Yeboah seeks damages under the FDCPA and FCRA for misrepresentations allegedly made in affidavits filed during those proceedings. *See* Compl. at 14–15.

As the Second Circuit has explained, "[w]hen money damages, as opposed to equitable relief, are sought, it is less likely that unacceptable interference with the ongoing state proceeding, the evil against which *Younger* seeks to guard, would result from the federal court's exercise of jurisdiction." *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000). As a result, the Second Circuit has held that "abstention and dismissal are inappropriate when damages are sought, even when a pending state proceeding raises identical issues and we would dismiss otherwise identical claims for declaratory and injunctive relief . . . ." *Id.* Instead, "a stay of the

---

[5] The Court also takes judicial notice that those proceedings appear to have concluded, as the Superior Court issued a judgment of strict foreclosure against Ms. Yeboah on June 17, 2019. *See U.S. Bank N.A. v. Yeboah*, No. HHD-CV12-6033619-S (Conn. Super. Ct. Jun. 17, 2019) (judgment of strict foreclosure); *see also Liberty Mut. Ins. Co.*, 969 F.2d at 1388 ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (citations and internal quotation marks omitted). While this would be another reason *Younger* would not apply, it is not clear whether or not Ms. Yeboah will be pursuing any appeal of the state court judgment. Accordingly, the Court does not reach the question of whether this is a basis for declining to abstain under *Younger*.

action pending resolution of the state proceeding may be appropriate." *Id.* (citing *Guilini v. Blessing*, 643 F.2d 189, 192–94 (2d Cir. 1981)).

Accordingly, the Court finds that abstention is not required under *Younger*.

### 2. *Colorado River* Abstention

Under the *Colorado River* abstention doctrine, federal courts may abstain from exercising their jurisdiction in cases that "do not fit neatly" into the three categories from *Younger* but where state and federal courts still "exercise concurrent jurisdiction simultaneously." *Vill. of Westfield v. Welch's*, 170 F.3d 116, 120 (2d Cir. 1999) (quoting *Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 76 (2d Cir. 1996) and citing *Colo. River*, 424 U.S. at 817–18). Unlike abstention under *Younger*, abstention under *Colorado River* is discretionary. *See Woodford v. Cmty. Action Agency of Greene Cty., Inc.*, 239 F.3d 517, 523 (2d Cir. 2001).

"The principles of *Colorado River* are to be applied only in situations involving the contemporaneous exercise of concurrent jurisdictions." *Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 117–18 (2d Cir. 1998) (citation and internal quotation marks omitted). "Therefore, a finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*."[6] *Id.* at 118 (citing *All. of Am. Insurers v. Cuomo*, 854 F.2d 591, 603 (2d Cir. 1988); *Day v. Union Mines Inc.*, 862 F.2d 652, 655 (7th Cir. 1988)).

---

[6] If this threshold requirement is satisfied, courts then consider: "(1) the assumption of jurisdiction by either court over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which the jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the property seeking to invoke federal jurisdiction." *Vill. of Westfield,* 170 F.3d at 121 (citing *Burnett*, 99 F.3d at 76). No single factor is determinative, and "only the clearest of justifications will warrant dismissal." *Colo. River*, 424 U.S. at 819; *see also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983) ("The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting to the case."); *De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989) ("In analyzing these factors, the Supreme Court admonishes that no single factor is necessarily decisive, and that the test does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.") (citations and internal quotation marks omitted).

A key factor in determining whether actions are genuinely concurrent is whether or not there is a substantial identity of parties between the state and federal actions. *See Day*, 862 F.2d at 655 ("Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum."), cited with approval in *Dittmer*, 146 F.3d at 118; *Aurelius Capital Master, Inc. v. MBIA Ins. Corp.*, 695 F. Supp. 2d 68, 73 (S.D.N.Y. 2010) ("While the Second Circuit has identified numerous factors relevant to determining whether abstention is appropriate under this doctrine, the threshold requirement is that there be a substantial identity of parties between the state and federal actions."). "[C]ommonality in subject matter" alone "does not amount to the 'contemporaneous exercise of concurrent jurisdictions.'" *Dittmer*, 146 F.3d at 118.

Here, the Court finds that while the federal and state court proceedings do share a common subject matter, there is not a substantial identity of parties here.[7] First, the Complaint names McCalla, a law firm that is not a party to the state court proceeding, as a defendant. Second, the state court proceeding is between U.S. Bank—not a party to this proceeding—and Ms. Yeboah. While Bank of America and Nationstar are both involved in the state court proceeding insofar as they are alleged to have provided lost note affidavits to U.S. Bank, they are not plaintiffs in the state court proceeding, but are both named as Defendants in this action.

These differences in parties prevent this Court from finding that these proceedings are, in fact, concurrent and parallel. Accordingly, the Court need not abstain under *Colorado River*.

---

[7] The Court again notes that those proceedings appear to have concluded, as the Superior Court issued a judgment of strict foreclosure against Ms. Yeboah in June. While this would be another reason *Colorado River* would not apply, as there is no longer any ongoing state court proceeding that could be said to be parallel to this one, it is not clear whether or not Ms. Yeboah will be pursuing any appeal of the state court judgment. Accordingly, the Court does not reach the question of whether this is a basis for declining to abstain under *Colorado River*.

### 3. *Burford* Abstention

Under the *Burford* abstention doctrine, "[w]here timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Public Serv.*, 491 U.S. at 361 (citation and internal quotation marks omitted); *see also Burford v. Sun Oil Co.*, 319 U.S. 315, 333–34 (1943) ("The state provides a unified method for the formation of policy and determination of cases by the Commission and by the state courts. The judicial review of the Commission's decisions in the state courts is expeditious and adequate. Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts. On the other hand, if the state procedure is followed from the Commission to the State Supreme Court, ultimate review of the federal questions is fully preserved here. Under such circumstances, a sound respect for the independence of state action requires the federal equity court to stay its hand.").

McCalla argues that *Burford* requires abstention because "[l]itigating parallel FDCPA proceedings in federal court based on the state court allegations arguably disrupts a state's interest in determining ownership of a loan and timely concluding foreclosure proceedings." McCalla Mem. at 5.

The Court disagrees.

First, neither this proceeding nor the state court proceeding involve "proceedings or orders of state administrative agencies." *See Cuomo*, 854 F.2d at 600–01 ("There is no challenge to a state administrative or judicial order made pursuant to state law. This case does not involve the federal courts in disrupting any ongoing state judicial or administrative proceedings. No unclear state laws, issues, or rulings are implicated . . . . There is no attempt to avoid any prior state court or agency determination. This case does not involve federal courts in supervising, interrupting, or meddling in state policies by interfering in state regulatory matters . . . . The Court finds that abstention based on the *Burford* doctrine is neither necessary nor proper."); *Aurelius*, 695 F. Supp. 2d at 73 ("[A]s this case involves a challenge to a transaction approved by the Superintendent [of Insurance] approximately one year ago, there is little risk of interfering with an ongoing state administrative proceeding, and *Burford* abstention is not appropriate on these facts.").

Second, while the Supreme Court has recognized that, under some limited circumstances, *Burford* may permit a federal court to stay actions for damages pending resolution by state courts of a disputed question of law, it does not generally support abstention when no equitable relief is sought. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731 (1996) ("Under our precedents, federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary. Because this was a damages action, we conclude that the District Court's remand order was an unwarranted application of the *Burford* doctrine."). As already discussed, Ms. Yeboah is primarily seeking monetary damages— not equitable relief. *See supra*, § III.B.1.

Accordingly, the Court finds that abstention is not required under *Burford*.

### 4. *Rooker-Feldman* Abstention

The *Rooker-Feldman* doctrine bars a party "from seeking what is in substance appellate review of the state judgment in federal district court based on the party's claim that the state judgment violates his or her federal rights." *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 414–15 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983). The *Rooker-Feldman* doctrine renders certain cases beyond the reach of the federal district courts. *Feldman*, 460 U.S. at 486 ("Federal district courts do not have jurisdiction, however, over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.").

While Defendants have not expressly moved to dismiss under *Rooker-Feldman*, McCalla argued in its motion that once the state court had ruled on Ms. Yeboah's then-pending state-court motion to dismiss, *Rooker-Feldman* would apply to bar this claim. *See* McCalla Mem. at 6 ("When the Superior Court issues its ruling on the motion to dismiss, preclusion doctrines will apply, including *Rooker-Feldman*. As the Second Circuit has explained: 'The *Rooker-Feldman* doctrine . . . bars federal courts from considering claims that are "inextricably intertwined" with a prior state court determination.'") (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999), and collecting cases).

The Court disagrees.

First, the interpretation of *Rooker-Feldman* as barring federal courts from exercising jurisdiction over federal claims that are "inextricably intertwined" with a state court judgment has been rejected by the United States Supreme Court. *See Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 292–93 (2005) ("[N]either *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same

or related question while the case remains *sub judice* in a federal court. Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law . . . . Preclusion, of course, is not a jurisdictional matter. In parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in state court.") (citing FED. R. CIV. P. 8(c)).

Second, the requirements for *Rooker-Feldman* to apply, as articulated by the Second Circuit in the wake of *Exxon Mobil*, are not met here. *See Sung Cho v. City of N.Y.*, 910 F.3d 639, 645 ("Much of our previous case law was thus abrogated [by *Exxon Mobil*], and we subsequently articulated that in order for a court to be deprived of jurisdiction under the *Rooker-Feldman* doctrine, four requirements must be met: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced.") (citation omitted).

Ms. Yeboah has not invited this Court to directly review and reject any judgment of the state court. In addition, the state court litigation was still ongoing when the proceedings in this Court began.

Accordingly, the Court finds that abstention is not required under *Rooker–Feldman*.

Because none of these abstention doctrines have been properly invoked, the Court may exercise jurisdiction over Ms. Yeboah's FDCPA and FCRA claims.

### C. Failure to State a Claim

Defendants all argue, under Rule 12(b)(6), that Ms. Yeboah has failed to state any plausible claim upon which relief may be granted.[8] McCalla Mem. at 9; Bank of America Mem. at 11–15; Nationstar Mem. at 14–22.

The Court agrees.[9]

### 1. Fair Debt Collection Practices Act: 15 U.S.C. § 1692e Claims

Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" is a violation of this statute. 15 U.S.C. § 1692e(10).

In Count One of the Complaint, Ms. Yeboah alleges that the affidavits Defendants submitted in the state foreclosure action were "false, deceptive, or misleading representations or means . . . used in connection with the collection of" her debt, in violation of 15 U.S.C. § 1692e(10). While it is not clear in the Complaint, this Count appears to be exclusively brought against Bank of America and Nationstar.

---

[8] Defendants have also all argued that the Fair Debt Collection Practices Act claims are time-barred under the law's one-year statute of limitations. *See* 15 U.S.C. § 1692k(d); McCalla Mem. at 12–15; Nationstar Mem. at 12–14; Bank of America Mem. at 9–10. Bank of America also argues that the Fair Credit Reporting Act claims are time-barred under the relevant statute of limitations, which requires claims to be filed within two years of the date of discovery or five years after the violation occurred, whichever is earlier. *See* 15 U.S.C. § 1681p; Bank of America Mem. at 10–11. A statute of limitations defense "may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) (citing *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008)). Because dismissal is appropriate on other grounds, however, the Court does not reach the question of whether the face of the Complaint definitively indicates that Ms. Yeboah's claims are time-barred.

[9] While Ms. Yeboah is currently proceeding *pro se*, she was represented at the time she filed her Complaint. Accordingly, the Complaint is not entitled to the "liberal reading" that is generally required for the complaints of *pro se* litigants. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest.") (citations, internal quotation marks, and alterations omitted); *Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) ("[W]hile a *pro se* litigant should ordinarily be afforded a substantial degree of solicitude, the exact degree thereof will depend upon a variety of factors, including, but not necessarily limited to, the specific procedural context and relevant characteristics of the particular litigant.").

Bank of America argues that Ms. Yeboah fails to state a claim because she has not properly alleged that Bank of America is a debt collector subject to § 1692e. Bank of America Mem. at 12. Bank of America further argues that Ms. Yeboah's allegation that Bank of America never acquired possession of the note as the servicer of the note is conclusory and self-serving, and that Ms. Yeboah alleges no well-pleaded facts in support of this allegation. Bank of America Mem. at 13.

Nationstar argues that Ms. Yeboah fails to allege "any material misrepresentation as required to plead a claim pursuant to §§ 1692e(10) and 1692f." Nationstar Mem. at 16. Specifically, Nationstar argues that Ms. Yeboah has not alleged any false representations that are material in the sense that they would be likely to mislead "the least sophisticated debtor." *Id.* at 17.

The Court agrees with Bank of America and Nationstar.

First, Ms. Yeboah alleges no facts to support her conclusory allegation that Bank of America is a "debt collector" as that term is defined by the FDCPA. *See* 15 U.S.C. § 1692a(6) ("The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."); *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721, 1724 (2017) ("[T]he Act defines debt collectors to include those who regularly seek to collect debts 'owed . . . another.' And by its plain terms this language seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself. Neither does this language appear to suggest that we should care how a debt owner came to be a debt owner—whether the owner originated the debt or came by it only

through a later purchase. All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.' . . . . [U]nder the definition at issue before us you have to attempt to collect debts owed *another* before you can ever qualify as a debt collector.") (emphasis in original). She simply declares Bank of America to be a debt collector. *See* Compl. ¶ 10 ("[Bank of America] is a debt collector as defined under the FDCPA[.]"); *see also Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555); *Twombly*, 550 U.S. at 555 ("[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Second, the Court agrees that Ms. Yeboah has failed to allege that Nationstar's representations were material such that they could reasonably impede her "ability to pay or challenge the debt she incurred." Nationstar Mem. at 18; *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x. 89, 95 (2d Cir. 2012) ("[T]he false statements of which Gabriele complains do not amount to the kind of misleading and deceptive practices that fall within the ambit of the FDCPA, and therefore fail to state a plausible claim."); *Walsh v. Law Office of Howard Lee Schiff, P.C.*, No. 3:11-cv-1111 (SRU), 2012 WL 4372251 (granting defendants' motions to dismiss because plaintiff did not "assert that these statements caused her any confusion about the validity or amount of the debt or otherwise impeded her ability to pay or challenge it."); *Klein v. Solomon and Solomon, P.C.*, No. 3:10-cv-1800 (WWE), 2011 WL 5354250 (D. Conn. Oct. 27, 2011) (granting defendants' motion to dismiss because "the complaint does not contain any allegations of false representations that could be construed as material so as to mislead plaintiff in his repayment of or challenge to the debt.").

Accordingly, Count One of the Complaint will be dismissed.

### 2. Fair Debt Collection Practices Act: 15 U.S.C. § 1692f Claims

Under the FDCPA, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" is a violation of this statute. 15 U.S.C. § 1692e(10).

In Count Two of the Complaint, Ms. Yeboah alleges that the affidavits Defendants submitted in the state foreclosure action "constitute unfair or unconscionable means to attempt to collect" her debt. Compl. ¶ 53. While it is not clear in the Complaint, this Count also appears to be exclusively brought against Bank of America and Nationstar.

Bank of America and Nationstar argue the same reasons for dismissal of the § 1692e claims apply to Ms. Yeboah's claims under § 1692f. Bank of America Mem. at 13; Nationstar Mem. at 16–18.

The Court agrees.

In addition, the Court finds that Ms. Yeboah has failed to allege any conduct that could be considered "unfair or unconscionable means" of collecting a debt. "Although the FDCPA leaves the term 'unfair or unconscionable means' undefined," the Second Circuit has "held that the term refers to practices that are 'shockingly unjust or unfair, or affronting the sense of justice, decency, or reasonableness.'" *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017) (quoting *Gallego v. Northland Grp.*, 814 F.3d 123, 128 (2d Cir. 2016). "The least sophisticated consumer standard is used to determine whether a practice is unfair or unconscionable." *Id.* (citations omitted). Under this standard, the Second Circuit has held that "a debt collector engages in unfair or unconscionable litigation conduct in violation of section

1692f when, as alleged here, it in bad faith unduly prolongs legal proceedings or requires a consumer to appear at an unnecessary hearing." *Id.*

The Complaint contains no allegations of conduct from which it can be plausibly inferred that Bank of America or Nationstar engaged in unfair or unconscionable litigation conduct here. It seems that Ms. Yeboah simply does not believe what Bank of America or Nationstar said in their affidavits was true. But Ms. Yeboah has been in foreclosure proceedings for nearly seven years, and has had a full opportunity to litigate the validity of the affidavits. Absent any factual allegations that would support Ms. Yeboah's allegation that these documents were bald-faced lies, the Court does not see how the conduct alleged could plausibly support a finding of liability under § 1692f. *See Iqbal*, 556 U.S. at 678 (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss under Rule 12(b)(6)) (citing *Twombly*, 550 U.S. at 555).

Accordingly, Count Two of the Complaint will be dismissed.

### 3. Fair Debt Collection Practices Act: 15 U.S.C. § 1692g(a)(2) Claims

Under the FDCPA, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing . . . (2) the name of the creditor to whom the debt is owed[.]" 15 U.S.C. § 1692g(a)(2). "The FDCPA does not offer a definition of 'initial communication.'" *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017).

In Count Three of the Complaint, Ms. Yeboah alleges that all three Defendants failed to send her, at any time before or after the foreclosure action was filed, a written notice stating that

Wilmington Finance Inc. was the creditor to whom her mortgage and note was owed, in violation of § 1692g(a)(2). Compl. ¶¶ 60–61.

Nationstar argues that Ms. Yeboah fails to state a claim under this statute because legal pleadings are specifically exempted under the statute from the definition of "initial communication." Nationstar Mem. at 19–20.

Bank of America argues that Ms. Yeboah fails to allege what communication constituted the "initial communication" triggering the alleged obligation to send a notice. Bank of America Mem. at 13.

McCalla argues that any communication with Ms. Yeboah in the context of the foreclosure action did not trigger any obligation under the statute because Ms. Yeboah was represented by counsel; accordingly, such communications are really communications with her counsel. McCalla Mem. at 15.

The Court agrees with Nationstar.

Bank of America is correct that the Complaint, as currently pleaded, does not explicitly identify an "initial communication." But a fair reading of the Complaint would suggest that the intent was to plead that the affidavits were the initial communications. *See* Compl. ¶¶ 62–63 ("[Defendants] used false affidavits and false LNAs to represent and claim that they or their principals owned Ms. Yeboah's mortgage and note. All documents mentioned above which were submitted in court for the foreclosure action *were also sent to Mrs. Yeboah*.") (emphasis added).

The Second Circuit recently recognized that foreclosure complaints are not initial communications, that documents amended to those complaints are not initial communications, and that legally required filings accompanying a complaint are also exempted, all under § 1692g(d)'s pleading exclusion. *See Cohen v. Rosicki, Rosicki & Assocs.*, 897 F.3d 75, 87–88

(2d Cir. 2018) ("Cohen contends that the Certificate and RJI were initial communications as defined by § 1692g(a) and that because the defendants failed to identify the correct creditor in these documents, they are liable for damages under the FDCPA . . . . We conclude that the Certificate falls within § 1692g(d)'s pleading exclusion, and is therefore not an initial communication, because the defendants were legally obligated to file this document with the foreclosure complaint. . . . Therefore, under *Carlin*, legally required filings accompanying a complaint are also exempt. The fact that the Certificate is not denominated a 'pleading' under the Federal Rules of Civil Procedure or the New York Civil Practice Law and Rules warrants no different conclusion. As *Carlin* instructs, Congress adopted a 'broad exclusion that, on its face, applies to any communication forming any part of a pleading' . . . . *Carlin*'s reasoning applies not only to documents attached to an initial pleading but also to those documents that state law mandates a plaintiff to file shortly thereafter, and in relation to that pleading, to complete the initiation of the case.") (quoting *Carlin*, 852 F.3d at 213).

Because all of the documents that it appears Ms. Yeboah may have meant to allege as initial communications are specifically exempted from liability under § 1692g(d), Count Three of the Complaint will be dismissed.

### 4. Fair Credit Reporting Act Claims

"The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012). "In certain circumstances, a consumer may bring a civil cause of action against any person who

'willfully fails to comply with any requirement imposed under' the Act and recover actual or statutory damages, punitive damages, costs, and attorneys' fees." *Id.* at 151.

In Count Four of the Complaint, Ms. Yeboah alleges that all three Defendants refused to correct their reports to Credit Reporting Agencies about the true creditor on their note and mortgage. Compl. ¶ 74. Ms. Yeboah argues this conduct violated the Fair Credit Reporting Act, specifically 15 U.S.C. § 1681s-2(b).

Defendants argue that Ms. Yeboah has not pleaded facts sufficient to show that her right to bring a claim has been triggered. *See, e.g.*, McCalla Mem. at 16–17; Bank of America Mem. at 14–15; Nationstar Mem. at 20–22.

The Court agrees with Defendants.

"To state a claim under section 1681s–2(b) of the statute, a plaintiff must allege that a furnisher received notice of a credit dispute from a consumer reporting agency." *Munroe v. Nationstar Mortg. LLC*, 207 F. Supp. 3d 232, 238 (E.D.N.Y. 2016) (citing *Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 344 (E.D.N.Y. 2012).

The statute requires, however, that the furnisher conduct an investigation into the accuracy of the information and, if an item of information disputed by a consumer is found to be inaccurate, to take certain remedial steps. *See* 15 U.S.C. § 1681s-2(b).

But Ms. Yeboah's allegations do not indicate that Defendants failed to investigate. Rather, she alleges that they investigated, but did not come to the conclusion she wanted. *See* Compl. ¶¶ 72–73. As pleaded, these allegations fail to state a plausible claim for relief under the statute. *Twombly*, 550 U.S. at 547 ("Here, the Court is not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Because the

plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

Accordingly, Count Four of the Complaint will be dismissed.

### D. Leave to Amend

While Ms. Yeboah has not yet moved for leave to amend the Complaint, for the reasons discussed below, granting such leave to amend also would be futile.

"[I]t is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint." *Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 91 (2d Cir. 2003) (citing *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)). "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Koehler v. Bank of Bermuda (N.Y.) Ltd.*, 209 F.3d 130, 138 (2d Cir. 2000)).

Although represented at the time she filed her Complaint, Ms. Yeboah is currently proceeding *pro se*. As a general matter, the Second Circuit has recognized that the solicitude afforded to *pro se* litigants includes a "relaxation of the limitations on the amendment of pleadings[.]" *Tracy*, 623 F.3d at 101 (citing *Holmes v. Goldin*, 615 F.2d 83 ,85 (2d Cir. 1980) ("A *pro se* plaintiff . . . should be afforded an opportunity fairly freely to amend his complaint."); *see also Grullon v. City of New Haven,* 720 F.3d 133, 139 (2d Cir. 2013) ("A *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (quoting *Chavis*

*v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010)) (internal quotation marks and alterations omitted).

But where there is no indication that pleading additional facts would resuscitate a claim that has been dismissed, the Court need not grant leave to amend. *See Gruillon*, 720 F.3d at 140 ("Leave to amend may properly be denied if the amendment would be 'futil[e].'") (quoting *Foman*, 371 U.S. at 182); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("[w]here it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend."); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) ("[W]e do not find that the complaint 'liberally read' suggests that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe . . . . The problem with [this pro se plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citations, internal quotation marks, and alterations omitted).

Ms. Yeboah has not seized the opportunity she already had to object to these motions, or moved to amend her Complaint. Ms. Yeboah has had nearly three months to object to the most recently filed motions to dismiss, but has declined to do so. While the Court recognizes that Ms. Yeboah is no longer represented, this fact alone does not excuse her from her basic obligation to indicate whether and how she opposes multiple dispositive motions to dismiss made by Defendants—particularly when the Court's Local Rules put litigants on notice that the "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion." D. Conn. L. Civ. R. 7(a)(2).

Leave to amend here also would be futile because, for the reasons outlined above, the legal theories behind Ms. Yeboah's claims are fundamentally flawed, and an opportunity to amend will not cure them. Accordingly, the Court declines to provide leave to amend the Complaint.[10] *See Wright v. Albany City Police Court,* 1:18-CV-649, 2018 WL 4347793 at *3 (N.D.N.Y. Sept. 12, 2018) (after reviewing report and recommendation of dismissal of *pro se* plaintiff's complaint, and objections, and adopting recommendation, court concluded that "granting Plaintiff leave to amend would be, to say the least, unlikely to be productive and indeed would be futile."); *Brownville v. Indian Mtn. Sch.*, No. 3:14-cv-1472 (JBA), 2017 WL 3726467, at *8 (D. Conn. Aug. 29, 2017) (denying plaintiff's motion to amend the complaint because "nothing in [his] documents . . . support[ed]" his central claim, meaning that "any amendment to the Complaint would be futile."); *Galloway v. Caputo*, No. 3:17-cv-2156 (JCH), 2018 WL 5044244, at *2 (D. Conn. Feb. 9, 2018) ("Although the Court reads the pleadings of self-represented parties generously, it is plain that there is no basis for the assertion of federal jurisdiction over this personal injury claim between non-diverse parties. Leave to amend need not be granted, particularly where a plaintiff has already had an opportunity to amend the complaint, when amendment would be futile.").

---

[10] This action also may have been filed in bad faith, and any further amendment would also likely be made in bad faith, with the primary goal of engendering further delays in the state court foreclosure proceedings. As noted above, bad faith is an independent reason for denying leave to amend. *See Jin*, 310 F.3d at 101; *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.") (citing *Foman*, 371 U.S. at 182). While there is "little case law within this Circuit to guide this court in terms of what constitutes bad faith as a ground for denying leave to amend," "[a] finding that a party is seeking leave to amend solely to gain a tactical advantage, also supports a finding that such an amendment is made in bad faith." *Oneida Indian Nation of N.Y. State v. Cty. of Oneida, N.Y.*, 199 F.R.D. 61, 80 (N.D.N.Y. 2000); *accord Youngbloods v. BMG Music*, No. 07 Civ. 2394 (GBD)(KNF), 2011 WL 43510, at *9 (S.D.N.Y. Jan. 6, 2011) (citing *Oneida*, 199 F.R.D. at 80); *see also Bennett v. Care Corr. Sol. Med. Contracted*, No. 15 Civ. 3746 (JCM), 2017 WL 4250519, at *5 (S.D.N.Y. Sept. 25, 2017) ("The Court could thus find that Plaintiff's attempt to add a claim regarding his meniscus and ACL was an effort to circumvent the Court's prior orders barring Plaintiff from filing new actions, and was therefore made in bad faith.").

## IV. CONCLUSION

For the reasons explained above, Defendants' motions to dismiss are **GRANTED**.

While Defendants' motions seeking dismissal under Federal Rule of Civil Procedure 12(b)(1) are granted with respect to Mr. Yeboah—who lacks standing to sue Defendants—the Court does address the merits of Ms. Yeboah's claims, and dismisses them under Federal Rule of Civil Procedure 12(b)(6).

The Court also finds that leave to amend the Complaint would be futile.

The Court therefore **DISMISSES** this case with prejudice.

The Clerk of the Court is respectfully directed to dismiss Mr. Yeboah from this case, to enter judgment against Ms. Yeboah only, and to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of July, 2019.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge
